IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-01557-PAB-KLM

ENTEK GRB, LLC,

      Plaintiff,

v.

STULL RANCHES, LLC,

      Defendant.

---

**ORDER**

---

This matter is before the Court on the Motion to Dismiss [Docket No. 87] filed by

Entek GRB, LLC ("Entek").  The motion is fully briefed and ripe for disposition.

## I. BACKGROUND

Entek is the lessee of mineral estates granted by the Bureau of Land

Management ("BLM").  Entek's mineral estates are located in the Focus Ranch Unit,

which is a collection of mineral leases combined to facilitate development.  Defendant

Stull Ranches, LLC ("Stull") owns some of the surface area overlying Entek's mineral

estate.  Entek seeks to conduct drilling activity on Stull's surface area.  In its amended

complaint, Entek seeks a declaratory judgment that it has the right to use all of Stull's

surface, superjacent to its mineral estates, to perform surveying and staking activities.

Docket No. 81 at 11.  Entek also seeks a declaratory judgment that it has the right to

drill and develop proposed well locations on Stull's surface, subject to approval by the

BLM and the Colorado Oil and Gas Conservation Commission ("COGCC").  *Id*. at 11-12.

On September 26, 2011, Stull filed its amended third counterclaim [Docket No. 61] against Entek for violation of the common law accommodation doctrine[1] and Colorado's statutory equivalent, Colo. Rev. Stat. § 34-60-127.  *Id*. at 3.  In support of its counterclaim, Stull claims that it runs a cattle raising business, provides hunting for big game hunters, and that its property is home to various forms of wildlife.  Stull asserts that Entek's proposal to drill five wells and use of Stull's roads will interfere with Stull's

---

[1]The Colorado Supreme Court first articulated the accommodation doctrine in *Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913 (Colo. 1997).  In *Gerrity*, the court recognized that a severed mineral estate lacks value unless the mineral lessee can access the surface to develop his minerals.  *Id*. at 926.  Thus, the Court adopted the rule of reasonable surface use, which allows mineral lessees to use the surface estate to the extent reasonably necessary to develop their minerals.  *Id*. at 927.  However, the *Gerrity* court recognized the tension which arises between a mineral lessee's right to use the surface estate and the surface owners' right to use the entirety of the surface so long as it does not preclude the development of the mineral estate.  *Id*.  In resolving these competing interests, the court reasoned that "each owner must have due regard for the rights of the other in making use of the estate in question."  *Id*.  This "due regard" means that mineral lessees must "accommodate surface owners to the fullest extent possible consistent with their right to develop the mineral estate."  *Id*.

In 1997, the Colorado General Assembly codified part of the *Gerrity* decision by enacting Colo. Rev. Stat. § 34-60-127.  The statute requires that a mineral lessee "conduct oil and gas operations in a manner that accommodates the surface owner by minimizing intrusion upon and damage to the surface of the land."  Colo. Rev. Stat. § 34-60-127(1)(a).  It also grants a surface owner a cause of action if the mineral lessee fails to "meet the requirements set forth" in the statute.  Colo. Rev. Stat. § 34-60-127(2).  The mineral lessee's requirements under the statute include "minimizing intrusion upon and damage to the surface" as well as "selecting alternative locations for wells, roads, pipelines, or production facilities . . . where such alternatives are technologically sound, economically practicable, and reasonably available."  Colo. Rev. Stat. § 34-60-127(1)(b).  Under both the common law accommodation doctrine and Colorado's statutory equivalent, the focus of the inquiry is the same – did the mineral lessee accommodate the surface owner to the fullest extent possible by considering available alternatives to develop the mineral estate.  *See Greeley–Rothe, LLC v. Anadarko E & P Company LP*, No. 08-cv-00401-MSK-BNB, 2010 WL 1380365, at *7 (D. Colo. Mar. 31, 2010).

hunting business, disturb the wildlife, and result in excessive construction on hundreds of acres of Stull's property. *Id*. at 2-3. Stull contends that Entek will not adopt reasonable alternatives for the benefit of Stull's surface estate. *Id*. at 3.

## II.  ANALYSIS

Entek states that it bases its motion on Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss a counterclaim is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss a claim. *Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1261 (10th Cir. 2003). Under Rule 12(b)(6), a court must accept all the well-pleaded allegations of the counterclaim as true and must construe them in a light most favorable to the plaintiff. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 1007). In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the challenged complaint (or counterclaim) itself, but also attached exhibits and documents incorporated into the complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). However, if the Court relies on other matters, it must convert the motion to one for summary judgment. *SEC v. Wolfson*, 539 F.3d 1249, 1264 (10th Cir. 2008).

Despite these tenets of Rule 12(b)(6) motions, the "factual background" to Entek's motion to dismiss never cites Stull's counterclaim. Instead, in support of its factual assertions, it cites its own first amended complaint and various documents it filed in support of its Motion for Leave to Amend Complaint (CM-ECF Docket No. 18) [Docket No. 72]. To the extent Entek's arguments rely on matters outside of Stull's

counterclaim, there are no grounds for dismissing the counterclaim based on Fed. R. Civ. P. 12(b)(6).

Entek also moves to dismiss Stull's counterclaim as premature.  Docket No. 87 at 5.  While Entek fails to identify the procedural or constitutional basis for this argument, Stull has recognized that Entek seems to be raising a "justiciability claim, i.e., that Stull Ranches' claim is not yet ripe."  Docket No. 90 at 5.

As an Article III court, the Court's jurisdiction is limited by the Constitution to "cases" and "controversies."  *Allen v. Wright*, 468 U.S. 737, 750 (1984).  Because the question of justiciability raises jurisdictional issues, the Court has an independent duty to determine whether the dispute, as framed by the parties, presents a justiciable controversy.  *People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002).  In addition to the issue of whether the dispute involves a "case" or "controversy," the ripeness doctrine considers prudential considerations limiting the court's jurisdiction.  *Alto Eldorado P'ship v. Cnty. of Santa Fe*, 634 F.3d 1170, 1173 (10th Cir. 2011).  The ripeness doctrine is "intended 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'"  *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (citation omitted).  The ripeness inquiry "focuses not on whether the plaintiff was in fact harmed, but rather whether the harm asserted has matured sufficiently to warrant judicial intervention."  *Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004).  Thus, the "[r]ipeness doctrine addresses a *timing* question: *when* in time is it appropriate for a court to take up the asserted claim."  *ACORN v. City of Tulsa,*

*Okla.*, 835 F.2d 735, 738 (10th Cir. 1987) (quoting *Action Alliance of Sr. Citizens v. Heckler*, 789 F.2d 931, 940 (D.C. Cir. 1986)) (emphasis in original).  The doctrine of ripeness also forestalls judicial determination of disputes until the controversy is presented in clean-cut and concrete form.  *Gonzales*, 64 F.3d at 1499.

The Court employs a two-factor test to determine whether an issue is ripe.  First, the Court evaluates the fitness of the issue for judicial resolution, and second, the hardship to the parties of withholding judicial consideration.  *Id.*  In determining whether an issue is fit for judicial review, the central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.  *Id.*  In assessing the hardship to the parties of withholding a ruling, the Court must determine if the challenged actions or allegations create a direct and immediate dilemma for the parties.  *Id.*[2]

Applying the ripeness test to Stull's counterclaim establishes that the claim is not ripe.  While Stull argues that "the geology, the routes of access, and the basis for objection are specific, known, and subject to a clear dispute," Docket No. 90 at 5, the counterclaim itself [Docket No. 61] establishes the contingent nature of Stull's claim.  Stull refers to "Plaintiff's <u>plans</u> to conduct oil and gas operations," ¶ 29, to "Plaintiff's

---

[2]"It is the burden of the complainant to allege facts demonstrating the appropriateness of invoking judicial resolution of the dispute." *Gonzales*, 64 F.3d at 1499 (citing *Renne v. Geary*, 501 U.S. 312, 317 (1991)).  A Rule 12(b)(1) motion can challenge the substance of a complaint's jurisdictional allegations in spite of its formal sufficiency by relying on affidavits or any other evidence properly before the court.  "It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.* (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).

proposed use of the Defendant's surface" and "ways Plaintiff's use would interfere," ¶ 30, and to "roads that Plaintiff proposes to use," ¶¶ 30(e) and (f) (emphasis added). Stull does not dispute that the BLM may reject all of Entek's proposed well locations, making any ruling on Stull's counterclaim advisory. In addition, because the exact location of the wells is unknown, the roads which Entek will use to reach those wells also remain unknown. The Court is unwilling to entertain a claim based on the reasonable use of a road leading to an unidentified well. *Gonzales,* 64 F.3d 1499. Therefore, Stull's accommodation doctrine counterclaim depends on uncertain and contingent events, namely, BLM approval of the well locations. *Id*.

With respect to the second factor, the Court finds that withholding judicial determination will not lead to undue hardship. It is unlikely that Stull will be subject to any hardship because there are no allegations that any current activity of Entek on Stull's roads and drill sites is causing harm. Thus, Entek's drilling proposals do not create an immediate dilemma. *Id.* Accordingly, because Stull's counterclaim is contingent on future events and Stull is unlikely to face hardship by a delay, Stull's counterclaim is not fit for judicial resolution. "Without a live, concrete controversy, we lack jurisdiction to consider claims no matter how meritorious." *Rio Grande Silvery Minnow v. Bur. of Reclam.*, 601 F.3d 1096, 1109 (10th Cir. 2010) (quoting *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007)). Therefore, the Court will dismiss Stull's amended third counterclaim without prejudice.[3]

---

[3]Because the Court does not have jurisdiction over Stull's counterclaim, the Court will not address Entek's arguments on the merits.

### III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Entek GRB LLC's Motion to Dismiss Stull Ranches, LLC's Third

Amended Counterclaim CM/ECF Docket No. 61 [Docket No. 87] is **GRANTED**.  It is

further

**ORDERED** that Stull Ranches, LLC's Amended Third Counterclaim [Docket No.

61] is dismissed without prejudice.

DATED September 28, 2012.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge