IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-01557-PAB-KLM

ENTEK GRB, LLC,

Plaintiff,

v.

STULL RANCHES, LLC,

Defendant.

---

**ORDER**

---

This matter is before the Court on the Motion to Dismiss [Docket No. 88] filed by defendant Stull Ranches, LLC ("Stull").

## I. BACKGROUND

Plaintiff Entek is the lessee of several mineral estates leased through the Bureau of Land Management ("BLM"). Entek's mineral estates at issue are located in the Focus Ranch Unit ("FRU"), a federal exploratory unit. The FRU is a collection of mineral leases combined through a unitization agreement for the purpose of facilitating the development of minerals. The majority of the land located in the FRU is leased pursuant to the Stock-Raising Homestead Act of 1916 ("SRHA"), 43 U.S.C. § 291 *et seq*. (repealed in part by Pub. L. 94-579 (1976)), and the Mineral Leasing Act of 1920 ("MLA"), 30 U.S.C. § 181 *et seq*.

Defendant Stull Ranches, LLC ("Stull") owns some of the surface area overlying Entek's mineral estates. Entek seeks to conduct drilling activity on Stull's surface area

and also use Stull's surface to reach two wells called the "3-1 well" and the "12-1 well," located on land owned by the BLM in fee simple, meaning the BLM owns both the surface and mineral estate. Stull refuses to grant Entek a right-of-way to use a road called the "Access Road" to reach the 3-1 well and the 12-1 well, *see* Docket No. 76-11, and has previously restricted Entek's access to survey and stake well locations on its property. Docket No. 81 at 10-11, ¶ 54.

Entek filed this action seeking a declaratory judgment of its rights. In its amended complaint, Entek requests a declaration that it: (1) has the right to stake, survey, drill, and develop well locations on Stull's surface (Count One); (2) may use Stull's surface to reach well locations on adjacent property if those wells will develop Entek's mineral estate subjacent to Stull's surface (Count Two); and (3) has a right to access all surface areas within the unitized federal exploratory unit because of the unitization agreement (Count Three).[1] Docket No. 81 at 11-14.

Stull's motion seeks to dismiss Entek's complaint pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure for failure to join a necessary party – the BLM. Docket No. 88 at 2-3. Stull also seeks to dismiss Entek's complaint pursuant to Rule 12(b)(1) alleging that Entek's declaratory relief request is vague and does not present a justiciable controversy. *Id*. at 10-11.

---

[1]Entek labels these declarations as "counts" but includes each of them in its first claim for relief. *See* Docket No. 81 at 13-14. The second claim for relief is for a permanent injunction. *Id*. at 14.

## II. ANALYSIS

### A. Absence of the BLM

Stull argues that this case should be dismissed for Entek's failure to join the BLM as a party. Rule 12(b)(7) allows for the dismissal of a case if a party fails to join a required party under Rule 19 of the Federal Rules of Civil Procedure. In order to dismiss the case pursuant to Rule 12(b)(7), the Court must find that (1) the BLM is a required person under Rule 19(a), (2) joinder of the BLM is infeasible under Rule 19(b), and (3) dismissal is appropriate.[2] Fed. R. Civ. P. 19; *Davis v. United States,* 343 F.3d 1282, 1288 (10th Cir. 2003). Stull bears the burden of showing that the BLM is a necessary and indispensable person. *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994).

To determine whether the BLM is a "required" person, the Court must first consider: (1) whether complete relief would be available to the parties already in the suit, (2) whether the absent person has an interest related to the suit which, as a practical matter, would be impaired, and (3) whether a party already in the suit would be subjected to a substantial risk of multiple or inconsistent obligations. Fed. R. Civ. P. 19(a); *Rishell v. Jane Phillips Episcopal Memorial Med. Ctr.*, 94 F.3d 1407, 1410 (10th Cir. 1996).

---

[2] Rule 19 was amended in 2007 for stylistic purposes only. *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 855-56 (2008); Adv. Comm. Notes on the 2007 Amendment to Fed. R. Civ. P. 19 (2007). The previous rule referred to "necessary" persons in 19(a), which are now called "required" persons, and "indispensable" persons in 19(b), persons the rule now generally refers to as those required to be joined if feasible but who cannot be joined. *See id.*

Stull claims the Court cannot grant Entek complete relief because the "dispositive issue in some of Entek's claims may be the scope of the surface rights created by the federal patents," which the Court cannot definitely resolve in the BLM's absence. Docket No. 88 at 5-6. Stull, however, does not clearly explain why the BLM's presence is necessary for the Court to determine the scope of Entek's leases. Stull apparently assumes that any decision by this Court will bear upon the scope of the BLM's interests. However, as a lessee, Entek acquired only a limited right to extract minerals within the geographical boundaries of its leases. Because Entek's rights are limited by the terms of its leases, the BLM has reversed the necessary rights to its mineral estates. The Court's ruling on Entek's declaratory judgment will not bear upon the right of the BLM to remove its minerals; it will only determine what surface use rights Entek, the lessee, has. As such, the BLM's interest in its minerals is neither altered nor affected in any way by Entek's declaratory judgment.[3] Accordingly, because complete relief under Rule 19 means "relief among those already parties to the case," the Court finds that it can, in the absence of the BLM, grant Entek full relief in this case. *Salt Lake Tribune Publ'g Co., LLC v. AT&T*, 320 F.3d 1081, 1097 (10th Cir. 2003).

The second factor to consider is whether the BLM "claims an interest relating to the subject of the action and is so situated that disposing of the action in [its] absence

---

[3]Stull cites *Transwestern Pipeline Co. v. Kerr-McGee Corp.*, 492 F.2d 878 (10th Cir. 1974), for the proposition that the BLM is a required party because any decision by the Court will impact the scope of the BLM's mineral rights. Docket No. 88 at 8-9. However, the issue in *Transwestern* was the surface owner's proposed use of eminent domain to "deny *any* mining activity" permitted by the mineral lessee. 492 F.2d at 883-84 (emphasis added). As noted above, the Court's ruling does not impact the BLM's interest in its minerals.

may . . . as a practical matter impair or impede [its] ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i). Under this rule, the Court must not consider the merits of the absent party's interest. *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 998 (10th Cir. 2001). Additionally, Rule 19, "by its plain language, does not require the absent party to actually *possess* an interest; it only requires the movant to show that the absent party *claims an interest* relating to the subject matter of the action." *Id*. (emphasis in original; internal quotation marks omitted).

Stull states that the BLM has not decided whether it will try to become a party in this case.[4] Docket No. 88 at 8 n.5. However, the issue is whether the BLM's interests would be impaired or impeded by this litigation and Stull does not clearly indicate the interests the BLM has in the subject matter of this case. In its reply, Stull lists several BLM regulations regarding the need to protect public lands, the impact on local economies, and the administration of grazing on public lands. Docket No. 92 at 4-5. However, none of these interests are affected by the Court construing leases issued by the BLM here. Because Entek's interests in the mineral leases are not the same

[4]The BLM is not required to intervene or otherwise participate. Requiring the United States to protect its interest through voluntary intervention would render Rule 19(b) almost completely nugatory. *Navajo Tribe of Indians v. State of New Mexico*, 809 F.2d 1455, 1472 n. 25 (10th Cir. 1987). A party satisfying Rule 19(a)(1)(B)(i), and yet not joined, thus requiring a Rule 19(b) analysis, would always satisfy the prerequisites for intervention as of right under Fed. R. Civ. P. 24(a). Pursuant to such an argument, a court could never find a Rule 19(a)(2) party indispensable under Rule 19(b), because such a party could always protect his interest by intervening. The purpose of Rule 19, however, is not to exhort an interested person to exercise its Rule 24 rights. Thus, the BLM is not actually required to claim an interest in this case for the Court to find in Stull's favor.

interests the BLM has in its mineral estate, Stull has not shown that the Court's ruling will impair or impede the BLM's ability to protect its interests.

The last criteria of the inquiry requires the Court to determine whether a party to the litigation will be "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). *See, e.g, United States Fire Ins. Co. v. HC-Rockrimmon, LLC*, 190 F.R.D. 575, 577 (D. Colo. 1999) (finding that the conceded risk of inconsistent judgments regarding a complex issue provided a basis for finding an absent third party necessary to the action). Stull claims that the Court cannot provide complete relief because Entek is only a lessee of the mineral rights and the "next time another lessee seeks to use Stull Ranches' land, Stull Ranches will be subject to relitigating the same issues." Docket No. 88 at 5-6. Stull's argument relates primarily to multiple litigation and not inconsistent obligations. Under Rule 19, inconsistent obligations refer to situations where a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum. *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998); *see also Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1098 (10th Cir. 2003) (stating that an inconsistent obligation would occur if a federal district court orders a defendant to transfer stock to the plaintiff while a state court orders the same defendant to transfer the same stock to a different party not involved in the federal litigation). In this regard, Stull has not shown that it will be subject to multiple or inconsistent obligations, as opposed to multiple litigation. Morever, Stull's claim that the BLM or Entek's successor-in-interest are likely to file other lawsuits is merely speculative. *See Sac & Fox Nation of Mo. v. Norton*, 240

F.3d 1250, 1259 (10th Cir. 2001) ("The key is whether the possibility of being subject to multiple obligations is real; an unsubstantiated or speculative risk will not satisfy the Rule 19(a) criteria") (citation omitted). Stull does not provide any evidence showing that it is likely the BLM will prosecute a similar case in the future or that Entek's successor-in-interest would not be subject to collateral estoppel. Accordingly, the Court finds that Stull has not shown that it will be subject to inconsistent obligations to the extent necessary to make the BLM a required person under Rule 19(a)(1)(B)(ii).

Because the Court finds that the BLM is not a required person under Rule 19(a), it need not address the feasibility of joining the BLM or the appropriateness of dismissal if the BLM cannot be joined. Accordingly, the Court will deny Stull's motion to dismiss pursuant to Rule 12(b)(7).

**B. Declaratory Judgment**

Stull argues that Entek's complaint should be dismissed because the allegations therein do not present a concrete case and controversy. Docket No. 88 at 10-11. Stull claims that the Court does not have jurisdiction over Entek's counts for declaratory judgment because they are based on "unspecified potential future well sites." *Id*. at 11-12 n.7. In response, Entek argues that it is not required to allege site-by-site well locations in order to secure a declaratory judgment.[5] Docket No. 91 at 10-11.

---

[5]Stull seeks to dismiss Entek's complaint pursuant to Fed. R. Civ. P. 12(b)(1) for a lack of subject matter jurisdiction. Where a party moves to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the attack can be either a factual attack or a facial attack on the allegations of the complaint. *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005). Where, as here, there is a facial attack on the sufficiency of the complaint, the Court must look to its factual allegations and accept them as true. *See id.*; *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).

The Declaratory Judgment Act, 28 U.S.C. § 2201, creates two requirements that parties seeking a declaratory judgment must meet. *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008). First, there must be an "actual controversy" at issue. *Id*. (noting that "actual controversy" requirement is tied to the case-or-controversy requirement of Article III of the United States Constitution). Once a district court satisfies itself that an "actual controversy" exists, the second requirement obligates a court to determine whether it should exercise its discretion to hear the case. Under the second step, the Court must consider case-specific "equitable, prudential, and policy arguments" to determine whether to either entertain or dismiss a declaratory judgment claim. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007). Stull does not argue that, if the Court has jurisdiction, it should abstain from exercising such jurisdiction over Entek's claims. *See* Docket No. 88 at 10-12. Accordingly, the Court's analysis will focus on whether Entek's complaint raises an actual controversy.

In determining if an "actual controversy" exists, the Supreme Court requires:

> that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*MedImmune*, 549 U.S. at 127 (internal quotation marks and alteration marks omitted). In other words, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*.

In Count One of the first claim for relief, Entek seeks a declaration that it may survey, stake, and access proposed well sites "which are on Stull surface where Entek is developing minerals below Stull surface and where such access is 'reasonably incident' to the development of Entek's mineral estate." Docket No. 81 at 13, ¶ 64. In Count Two, Entek seeks a declaration that it may "use Stull surface to drill wells and develop minerals from surface adjacent to Stull surface when those wells are reasonably likely to develop minerals, whether produced from or allocated to, the federal mineral estate underneath Stull surface." *Id*. at ¶ 66. In Count Three, Entek requests a declaration that, as the operator of the FRU, it "has the right to cross and otherwise use Stull surface that overlays the mineral estate unitized by the [FRU] Agreement for the purpose of developing unitized minerals within the [FRU]." *Id*. at 14, ¶ 69. Stull claims that all of Entek's counts do not present justiciable controversies to the extent they request declarations of rights unrelated to specific well locations. Docket No. 88 at 11.

Because the right to use the Access Road to reach the 3-1 well (Count Two) and the 12-1 well (Count Three) relates to specific well locations, the Court finds that Entek's request for a declaration of its right to reach these wells presents a justiciable controversy between the parties. *Surefoot LC*, 531 F.3d at 1240.

With regard to the unspecified well locations, Stull has previously restricted Entek's access to its mineral estate underlying Stull's surface[6] and Entek claims that Stull is likely to restrict such access again. Docket No. 81 at 12-13, ¶ 63. In fact, Stull

[6]Stull admits that it has opposed Entek's access to its surface area for staking and surveying activities. Docket No. 92 at 9.

does not dispute that it is likely to restrict Entek's use of the Access Road in the future. As noted above, Entek seeks access to Stull's surface estate to develop minerals that are subjacent to Stull's property and can be extracted from wells located upon or adjacent to Stull's surface estate, and minerals that are not subjacent to Stull's surface but are part of the FRU. Docket No. 81 at 13-14. Entek claims that, pursuant to the SRHA, it has the right to access Stull's surface "for all purposes reasonably incident" to the extraction of its minerals. *Id*. at 12, ¶ 61 (citing 43 U.S.C. § 299(a)). Entek asserts that the phrase "reasonably incident" includes the ability to perform surveying and staking activities on Stull's surface, even if a well location is not specified, as long as these activities can lead to the extraction of minerals subjacent to Stull's property (Count One). *Id*. at 13, ¶ 64. Entek also contends that the phrase "reasonably incident" allows it to cross Stull's surface to reach a well on adjacent property, if that well will extract oil and gas from Entek's mineral estate that is subjacent to Stull's surface estate (Count Two). *Id*. at 13, ¶¶ 66-67. In addition, Entek claims that the creation of the FRU gives the unit operator the right of access to all of the surface estates covered by the FRU, regardless of surface estate boundaries (Count Three). *Id*. at 14, ¶ 69.

Whether the phrase "reasonably incident" allows Entek to (1) perform staking and surveying activities on Stull's surface in connection with unspecified well locations, (2) use Stull's surface to reach a well located on adjacent land in order to extract minerals subjacent to Stull's surface, and (3) whether the unitization agreement gives the unit operator unfettered access to all surface estates located in the FRU are issues disputed by the parties. Moreover, given Stull's course of conduct regarding access and the likelihood that Stull will deny Entek the access it seeks in the future, the Court

finds that Entek's three counts in its first claim present a live controversy between the parties.[7] *See Surefoot LC*, 531 F.3d at 1244. Because this case raises justiciable claims, the Court will exercise its discretion to hear Entek's declaratory judgment requests.[8] Accordingly, the Court will deny Stull's motion to dismiss for lack of jurisdiction.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Motion to Dismiss Entek's First Amended Complaint [Docket No. 88] is **DENIED**.

DATED March 27, 2013.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

---

[7]To the extent Stull argues that Entek's requested access requires particularized determinations because of the accommodation doctrine, Docket No. 92 at 8-9, the Court does not agree. The accommodation doctrine creates a private right of action for a surface owner to pursue a damages action against a mineral lessee for the lessee's unreasonable use of the land. *See* Colo. Rev. Stat. § 34-60-127. The accommodation doctrine is not an affirmative defense and otherwise does not have any bearing on Entek's right to access Stull's property. Pursuant to *Gilbertz v. United States*, 808 F.2d 1374 (10th Cir. 1987), Entek's right to access Stull's property is dependent only on its ability to secure a bond from the BLM; thus, Stull's opposition to Entek's entry creates an "actual controversy."

[8]The Court finds that the factors in *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994), are otherwise satisfied. The declaratory judgment will settle the dispute and clarify Entek's access rights to its mineral estate, Entek does not seek a declaratory judgment for procedural fencing, there is no risk of friction between state and federal courts, and there is no alternative remedy which is more effective. *Id*. at 983.