IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-01557-PAB-KLM

ENTEK GRB, LLC,

      Plaintiff,

v.

STULL RANCHES, LLC,

      Defendant.

---

## ORDER

---

This matter is before the Court on the Motion for Summary Judgment filed by plaintiff Entek GRB, LLC ("Entek") [Docket No. 149] and the Motion for Partial Summary Judgment filed by defendant Stull Ranches, LLC ("Stull") [Docket No. 146].  The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

## I.  BACKGROUND[1]

This case arises out of a dispute regarding the rights of a mineral lessee to traverse a surface owner's estate to develop subterranean minerals from a well located on an adjacent property.  Entek is the lessee of mineral estates granted by the Bureau of Land Management ("BLM").  Entek is the successor-in-interest of Stone & Wolf, LLC ("Stone & Wolf"), Clayton Williams Energy, Inc. ("Clayton Williams"), and New Frontier Energy, Inc. ("New Frontier").  Entek's mineral estates are located in the Focus Ranch Unit ("FRU"), which is a collection of mineral leases combined to facilitate development.

---

[1]The following facts, unless otherwise indicated, are not in dispute.

*See* Docket No. 149-3.  Stone & Wolf created the FRU in 1999 and Entek is the current unit operator of the FRU.  *Id*.  Stull is not a party to the FRU.

The majority of the land located in the FRU is leased pursuant to two federal statutes: the Stock-Raising Homestead Act of 1916 ("SRHA"), 43 U.S.C. § 291 *et seq*. (repealed in part by Pub. L. 94-579 (1976)), and the Mineral Leasing Act of 1920 ("MLA"), 30 U.S.C. § 181 *et seq*.[2]  The SRHA severed the surface and mineral estates for public lands in the western states to facilitate the concurrent development of both the surface and subsurface resources.  *Watt v. W. Nuclear, Inc.*, 462 U.S. 36, 42-45 (1983).  Pursuant to the SRHA and the MLA, the federal government leased the surface estates for improvement of the land and reserved the rights to the mineral estates to realize a proper return from the extraction of minerals through separate leasing.  43 U.S.C. § 299(a); *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 504-05 (1928).

Entek's mineral leases and patents in the FRU are granted pursuant to the SRHA, and Entek owns the rights to certain minerals subjacent to Stull's surface estate. Stull does not challenge Entek's ownership rights to the leases and patents at issue.[3] The terms of Entek's leases and patents do not expressly grant a mineral lessee the right to use Stull's surface estate to access a well located on a surface estate owned by a third party.

---

[2]Although the SRHA was repealed in part in 1976, the section of the statute reserving mineral estates for the federal government is still in effect.  43 U.S.C. § 299.

[3]Entek owns the rights to Patent 985094, Docket No. 149-18; Patent 1010281, Docket No. 149-14; Lease COC-59666, Docket No. 149-29; Lease COC-69894, Docket No. 149-36; and Lease COC-59491.  Docket No. 149-25.

Entek filed this case to secure access to a well called the 3-1 well and a well called the 12-1 well. Entek owns the mineral estates subjacent to these wells. The 3-1 well and the 12-1 well are located on surface estates owned by the BLM and are part of the FRU.[4]  Currently, there is only one available road (the "Access Road") by which Entek may reach the 3-1 well.  *See* Docket No. 126-2[5]; Docket No. 133-1 (map of Access Road).  To reach the 3-1 well, Entek must use the Access Road to cross Stull's surface estate on Leases COC-59666, COC-69894, and COC-59491.  Entek applied to the BLM for bonds to secure access to the surface estates overlying these three leases. Docket No. 126-17.  The BLM granted the bond only for Lease COC-59491.  Docket No. 126-34.  Entek states that it does not know whether the BLM will approve the bonds for the remaining two leases.  Stull claims that the BLM did not grant the bonds for Leases COC-59666 and COC-69894 because the BLM does not grant bonds for leases on which no drilling activity is conducted.

Entek's predecessors-in-interest Clayton Williams and New Frontier accessed the 3-1 well by using an easement ("Stull Easement") obtained through an agreement with Stull.  The Stull Easement utilized the northwest portion of the Access Road, which travels across Section 33, Township 12 North, Range 88 West into Section 3, Township 11 North, Range 88 West.  *See* Docket No. 126-2.  However, Stull revoked the

---

[4]The 12-1 well is located to the southeast of the 3-1 well in Section 12.  *See* Docket No. 133-1; Docket No. 149-5 at 5.  Entek cannot use the road to the southeast to reach the 12-1 well because of the holding in *Stone & Wolf, LLC v. Three Forks Ranch Corp.*, No. 00-cv-01130-REB-OES, 2004 WL 5615898 (D. Colo. Jan. 8, 2004).

[5]This exhibit is a map of a section of the FRU with mylar overlays that Entek submitted conventionally to the Court.  The map includes details of the FRU, such as the surface owner boundaries, lease boundaries, and the location of the Access Road.

easement after New Frontier violated its terms and has refused to grant Entek an easement to access the 3-1 well.  Entek does not claim any rights of access arising out of the Stull Easement.

Entek alleges that, if it is granted access to the 3-1 well, it intends to drill directionally from the 3-1 well to reach minerals located subjacent to Stull's surface estate under Lease COC-59491 and Patent 985094.  *See* Docket No. 163-4 at 4.  Stull argues that Entek cannot determine whether any minerals extracted by the 3-1 well will be located subjacent to Stull's surface estate until the 3-1 well is fully drilled.

On September 2, 2011, Entek filed a motion for a preliminary injunction [Docket No. 45] to gain access to the 3-1 well.[6]  The Court denied Entek's motion on procedural grounds.  Docket No. 54.

On October 7, 2011, Entek filed an amended complaint [Docket No. 81].  Entek's first claim seeks a declaratory judgment that it has the right to: (1) stake, survey, drill, and develop well locations on Stull's surface (Count One); (2) use Stull's surface to reach well locations on adjacent property if those wells will develop Entek's mineral estate subjacent to Stull's surface (Count Two); and (3) access all surface areas within the unitized federal exploratory unit because of the unitization agreement (Count

---

[6]On June 8, 2011, Entek filed a complaint [Docket No. 18] and a motion for a temporary restraining order ("TRO") [Docket No. 15] in the District Court for Routt County, Colorado.  On June 15, 2011, Stull removed the case to this Court [Docket No. 1].  In its notice of removal, Stull alleged jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  *See* Docket No. 1.  However, because this case calls for the construction of federal statutes and a federal unitization agreement, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  *See Mountain Fuel Supply Co. v. Smith*, 471 F.2d 594, 596 (10th Cir. 1973).

Three).[7]  Docket No. 81 at 11-14.  The second claim for relief is for a permanent injunction.  *Id*. at 14.

On July 31, 2012, Stull filed a motion for partial summary judgment [Docket No. 146] requesting that the Court enter judgment in its favor and against Entek on Counts Two and Three of the first claim for relief and on the second claim for relief.  That same day, Entek filed a motion for summary judgment [Docket No. 149] requesting that the Court enter a declaratory judgment in its favor on all three counts in its first claim for relief and on Stull's counterclaim based on the accommodation doctrine.[8]  Docket No. 149 at 9-10.  Entek also requests that the Court permanently enjoin Stull from interfering with its rights of access.  *Id*.

On June 15, 2012, Entek filed a second motion for a preliminary injunction [Docket No. 126] to enjoin Stull from restricting its access to the 3-1 well.  After an evidentiary hearing on Entek's motion on August 1, 2012, Docket No. 150, the Court denied the motion, finding that nothing in Entek's leases, patents, and the unitization agreement granted Entek the right to use Stull's surface estate to reach the 3-1 well located on BLM surface.  *See* Docket No. 151 at 16-22.

---

[7]Entek labels these declarations as "counts" but includes each of them in its first claim for relief.  *See* Docket No. 81 at 11-14.

[8]On September 26, 2011, Stull filed its third amended counterclaim [Docket No. 61] against Entek for violation of the common law accommodation doctrine and Colorado's statutory equivalent, Colo. Rev. Stat. § 34-60-127.  On September 28, 2012, the Court dismissed Stull's accommodation doctrine counterclaim without prejudice.  *See* Docket No. 167 at 6-7.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  In deciding whether summary judgment is appropriate, the Court construes all facts and reasonable inferences drawn from the record in the light most favorable to the nonmoving party. *See McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).  Where, as here, the parties file cross-motions for summary judgment, the Court "assume[s] that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."  *James Barlow Family Ltd. P'ship v. David M. Munson*, Inc., 132 F.3d 1316, 1319 (10th Cir. 1997); *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

Because Stull does not bear the ultimate burden of persuasion at trial, it will be entitled to summary judgment if it can establish "'a lack of evidence for [Entek] on an essential element of [Entek's] claim[s].'"  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  If Stull can show a lack of evidence on an essential element of one of Entek's claims, Stull will be "entitled to a judgment as a matter of law" because Entek, the nonmoving party, would have failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  By contrast, Entek will be entitled to

summary judgment if it can "show that there is no genuine issue as to any material fact"

with regard to any of its claims.  *Id.*

## III.  ANALYSIS

In its motion for summary judgment, Entek requests that the Court enter a

declaratory judgment finding that Entek has the right to use:

> (1) Stull's surface to explore for, extract, and remove minerals located under that surface.  The types of wells covered by this Count are typified by the "5 wells" identified in [Docket No. 149-5 at 5 (the five wells with pink headings)].
>
> (2) Stull's surface to reach a well pad or access road located off Stull's surface where exploring for or developing minerals located under Stull's surface.  The type of well covered by this Count is typified by the 3-1 well, shown on [Docket No. 149-5 at 5].
>
> (3) Stull's surface within the FRU to reach a well pad located off Stull's surface but also within the FRU when exploring for or developing minerals located anywhere within the FRU.  Count Three logically includes all wells covered in Counts One and Two . . . [however,] [t]he type of well covered by this Count is typified by the 12-1 well, shown on [Docket No. 149-5 at 5].

Docket No. 149 at 9.

Entek contends that it is entitled to a declaratory judgment because the federal

government granted it an express right of access over Stull's surface estate pursuant to

its patents and leases, the SRHA, 43 C.F.R. §§ 3101.1-2, and the unitization

agreement.  *See* Docket No. 163 at 1.  Entek states that it does not seek to enforce any

implied rights of access over Stull's surface estate, but rather only express rights of

access.  *Id.*

7

### A.   Count One to Entek's First Claim for Relief

Entek seeks a declaratory judgment that it may use "Stull's surface to explore for, extract, and remove minerals located under [Stull's] surface," even if the proposed well locations are not identified with particularity.  Docket No. 149 at 9.

Generally, a surface estate is subservient to a mineral estate, which is considered dominant.  *See Kinney-Coastal*, 277 U.S. at 504; *Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 926 (Colo. 1997).  The mineral estate impliedly carries with it a right to use as much of the surface as may be reasonably necessary for operations relating to the mineral estate.  *See Kinney-Coastal*, 277 U.S. at 504-05 (noting that, pursuant to federal mineral leases, the lessee has "the right to extract and remove the oil and gas [and] also the appurtenant right to use the surface so far as may be necessary"); *Bourdieu v. Seaboard Oil Corp.*, 100 P.2d 528, 532 (Cal. App. 1940) ("lessees have not only a right to extract the oil and gas, but also the appurtenant right to enter and to use and occupy so much of the surface of the land").  Under the SRHA, a mineral lessee "shall have the right at all times to enter upon the lands entered or patented . . . for the purpose of prospecting for coal or other mineral therein."  43 U.S.C. § 299(a).  In addition, a federal "lessee shall have the right to use so much of the leased lands as is necessary to explore for, drill for, mine, extract, remove and dispose of all the leased resource in a leasehold."  43 C.F.R. § 3101.1-2.  As noted by the Tenth Circuit in *Gilbertz v. United States*, 808 F.2d 1374 (10th Cir. 1987), once a federal mineral lessee satisfies all of the conditions precedent for entry to its federal mineral lease, the surface owner cannot restrict a lessee's access to the surface if it is

8

reasonably incident to the extraction of minerals. *Id*. at 1379; *see also Reno Livestock Corp. v. Sun Oil Co.*, 638 P.2d 147, 151 (Wyo. 1981).

Because the SRHA allows a mineral lessee to access a surface estate to prospect for minerals, the right to prospect reasonably includes surveying and staking activities even if no specific well location has been identified.[9] *Gilbertz*, 808 F.2d at 1379; *Kinney-Coastal*, 277 U.S. at 506 (finding that mineral lessee is entitled to access the surface estate even if the "use of practically the entire surface is necessary for conducting reasonably efficient operations under the lease"). Thus, because the SRHA allows a mineral lessee to explore and drill for minerals, the Court finds that Entek is not required to identify specific well locations before it can have access to Stull's surface estate. 43 U.S.C. § 299(a); 43 C.F.R. § 3101.1-2. Entek is therefore entitled to summary judgment on this claim because there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.

Accordingly, the Court declares that, upon the satisfaction of all state and federal regulations and conditions precedent to access its mineral estate, Entek shall have the right to access Stull's surface estate to (1) perform work that is reasonably incident to the development of Entek's mineral estate that is subjacent to Stull's surface estate, such as staking and surveying proposed well sites on Stull's surface estate, and (2) access well sites or proposed well sites that are located on or upon, but not adjacent to or adjoining, Stull's surface estate to remove its minerals from a mineral estate that is

_____

[9]As noted in the Court's order on Stull's motion to dismiss [Docket No. 172], Entek's failure to identify particular well locations does not render this issue nonjusticiable.

subjacent to Stull's surface estate.  Entek's access to perform work on Stull's surface estate is limited to the geographical scope of Entek's particular mineral lease.  43 U.S.C. § 299(a).

### B.   Count Two to Entek's First Claim for Relief

Entek requests a declaratory judgment that it may access Stull's surface estate to drill directionally from a well located on BLM property, which bore may drain oil or gas from beneath Stull's surface.  Docket No. 163 at 8.  Entek claims that it may use Stull's surface estate in this manner because of its federal patents and leases, the SRHA, and the so-called "unity" rule of *Mountain Fuel Supply Co. v. Smith*, 471 F.2d 594 (10th Cir. 1973).  *Id*. at 9.

In its response to Stull's motion for partial summary judgment, Entek states that Stull does not have the "right to deny the government or Entek access to the reserved minerals through future laws allowing directional drilling or unitization."[10]  Docket No. 163 at 8.  The federal government's ability to access its own minerals is neither contested nor the issue presented in this case.  Instead, the question presented by Entek's motion is: did the federal government grant Entek, its mineral lessee, the right to cross Stull's surface estate to reach wells located on surface estates owned by a

---

[10]Entek states that the Court did not construe the clause in the SRHA, 43 U.S.C. § 299, which states that the mineral deposits reserved under the SRHA "shall be subject to disposal by the United States in accordance with the provisions of the coal and mineral land laws in force at the time of such disposal."  Docket No. 163 at 8 n.5. In the preliminary injunction order, the Court discussed the terms of the SRHA, Docket No. 151 at 16-17, the federal statute authorizing unitization and the unitization agreement, *id*. at 17-21, and cases discussing federal and state common law with regard to access to mineral estates.  *Id*. at 8-16.  Although the Court did not explicitly construe this clause of the SRHA, such construction was not necessary in light of the Court's discussion of the other authorities regarding "mineral land laws."

third party?  The question can also be phrased more broadly in property law terms: which of the "bundle of sticks" that the federal government reserved for itself when the surface and mineral estates were severed did the government transfer to Entek through the mineral leases and patents, the SRHA, and the unitization agreement?[11]

Because Entek is only a mineral lessee, it does not stand in the same position as the federal government.[12]  *See Coquina Oil Corp. v. Harry Kourlis Ranch*, 643 P.2d 519, 522-23 (Colo. 1982).  Thus, contrary to Entek's arguments, should Entek seek to access Stull's surface estate pursuant to a right not expressly granted by the federal government, Stull can deny Entek access to its surface estate.  *See Mountain Fuel*, 471 F.2d at 596 ("The authorities clearly hold that a surface owner of a tract of land on which minerals were reserved to the Government [pursuant to federal leases] may object to surface use of his lands by an oil and gas lessee for operations conducted upon other lands under a different ownership").

Accordingly, the question presented here is not whether the federal government can access Stull's surface estate to reach a well located on BLM property, but whether the federal government expressly granted Entek the right to cross Stull's surface estate

---

[11]As noted in the preliminary injunction order, to determine what rights a fee simple owner (in this case, the federal government) grants a mineral lessee (Entek), courts usually analyze the "terms of the lease."  *See* Docket No. 151 at 15 (citing *Kysar v. Amoco Prod. Co.*, 93 P.3d 1272, 1284 (N.M. 2004)).  Thus, the Court's discussion of *Kysar* in the preliminary injunction order was merely to illustrate that Entek, as the mineral lessee, can only assert implied or express rights granted by its leases, patents, or the unitization agreement.

[12]Entek states that it does not seek any implied rights of access.  Docket No. 163 at 1.  Thus, the Court's discussion will focus on the express rights granted by the leases, patents, the SRHA, and the unitization agreement.

to reach a well located on BLM property.  With these principles in mind, the Court addresses Entek's arguments.

> **1.** **Right to Cross Stull's Surface Estate to Reach a Well Located on BLM's Surface Estate that may Produce Minerals Subjacent to Stull's Surface Estate**

Entek claims that it may cross Stull's surface estate to reach a well located on BLM's surface because the SRHA allows a mineral lessee to enter so much of the surface estate as is "required for all purposes reasonably incident" to the extraction of federal minerals.  43 U.S.C. § 299(a); *see also* 43 C.F.R. § 3101.1-2.  Entek claims that construction of the phrase "reasonably incident" includes the ability to build a road or use a road located on Stull's surface estate to reach a well located on BLM's surface estate so long as Entek is able to remove minerals that are subjacent to Stull's surface estate.[13]  Docket No. 163 at 10.  In support of this construction, Entek relies on four arguments: (1) the plain and ordinary meaning of the phrase "reasonably incident"; (2) the fact that there are no "express limitations" restricting Entek's access to Stull's surface estate; (3) state court cases discussing surface access rights; and (4) the unity rule.  *Id*. at 11-17.

---

[13]The parties dispute whether drilling directionally from the 3-1 well will actually remove minerals located subjacent to Stull's surface.  Docket No. 163 at 4 [Undisputed Material Facts Nos. 25-28]; Docket No. 146 at 4-5 [Undisputed Material Facts Nos. 25-28].  The Court will assume for the purposes of this motion that Entek's directional drilling activities could reach minerals subjacent to Stull's surface.  Given this assumption, the Court finds that it is unnecessary to resolve the Motion to Exclude Opinions of Jan T. Tomanek [Docket No. 122], and the motion will be denied as moot.

### a.  Reasonably Incident

Entek contends that the plain meaning of the term "reasonably incident" allows it to cross Stull's surface to reach a well located on BLM property.  Docket No. 163 at 10-11.  In support of this argument, Entek provides general examples of "reasonable" uses of surface estates as well as general examples of what courts have deemed activities "incident" to the removal of minerals.  Docket No. 163 at 10-11.

In *Mountain Fuel*, the Tenth Circuit discussed the Agricultural Entry Act of 1914 ("AEA"), which leased federal surface estates subject to a reservation of rights for the federal government similar to the one found in Entek's leases.  *Id*. at 471 F.2d at 595. In construing the AEA, the Tenth Circuit found that a federal mineral lessee's use of a surface estate "for development *on the* lands of others or to *haul over such surface the production from the lands of others*" was not allowed pursuant to federal mineral leases. *Id*. at 597 (emphasis added).  In the preliminary injunction order, the Court referred to this legal principle as the "two surface owners rule" after the decision in *Stone & Wolf, LLC v. Three Forks Ranch Corp.*, No. 00-cv-01130-REB-OES, 2004 WL 5615898 (D. Colo. Jan. 8, 2004).  *See* Docket No. 151 at 10-11.  The preliminary injunction order also noted that the relevant determination for surface access under the two surface owners rule is generally the location of the well.  *Id*.; *see also Mountain Fuel*, 471 F.2d 596-97 ("Thus the doctrine considered above concerns the use of property of one owner for development *on, or use of,* the property of another) (emphasis added); *Bourdieu*, 100 P.2d at 534-35; *Gilbertz*, 808 F.2d at 1382; 83 A.L.R. 2d 665, § 3(a) (collecting cases).

13

In light of the holding in *Mountain Fuel*, none of the general descriptions Entek provides are persuasive.  Entek has identified no cases, federal or state, that have construed the phrases "reasonably incident" or "reasonably necessary" as including the right to cross a surface estate to perform activities on the land of adjacent or adjoining surfaces.  Accordingly, the Court rejects Entek's plain meaning argument.

Entek next argues that if "Entek can put an access road *and* drill a well on Stull's patented surface in Sec. 33 to reach the minerals under Sec. 33, . . . it can also put only the access road on the same surface to reach the very same minerals."  Docket No. 163 at 12 (emphasis in original).  The issue, however, cannot be resolved by that type of deductive reasoning, but rather the Court must determine what rights Stull has regarding the use of its surface.  Given that Stull has a right to object to Entek's use of its surface estate unless Entek is expressly granted such a right, Entek's argument is unpersuasive.  *See Mountain Fuel*, 471 F.2d at 596.

Third, Entek cites *Gulf Oil v. Deese*, 153 So.2d 614 (Ala. 1963), in support of the proposition that the two surface owners rule is not well suited for cases involving the production of oil and gas.[14]  Docket No. 163 at 11.  In *Deese*, the Alabama Supreme

---

[14]In *Gulf Oil v. Deese*, 153 So.2d 614 (Ala. 1963), plaintiff G.H. Deese purchased lots 1, 2, 3, the southern section of lot 4, and lot 5 of a surface estate that was subject to a reservation of rights for the mineral estate.  *Id*. at 616.  Gulf Oil Corporation ("Gulf Oil") was the mineral lessee for minerals underlying lots 1, 2, 3, the northern section of lot 4, and lot 5.  *Id*. at 617-18.  Gulf Oil operated a well located on the northern section of lot 4.  *See id*. at 616 (figure 1).  Gulf Oil's well removed oil subjacent to all of Mr. Deese's surface estates.  Mr. Deese sued Gulf Oil for trespass because Gulf Oil transported oil and other waste products from its mining activities across Mr. Deese's surface estate on lots 1, 2, 3, and 5.  *Id*.  In ruling for Gulf Oil, the court found that, to further the goals of a state ordered pooling statute, a lessee of oil rights had the right to use the surface estates of lots adjacent to its well, as long as the adjacent lots were covered under the mandatory pooling statute.  *Id*. at 618.  The court, however, found

Court recognized that pooling statutes allow for the efficient development of minerals, which counters the perils of the rule of capture.  *Deese*, however, does not stand for the proposition that the two surface owners rule should not apply to activities related to the production of oil and gas.  In fact, the Alabama Supreme Court declined to answer that exact question.  *Deese*, 153 So. 2d at 618.

Consequently, none of the evidence Entek provides supports the conclusion that the phrase "reasonably incident" allows a mineral lessee the right to access a surface estate to perform work on adjoining or adjacent property.  On the contrary, because of the holding in *Mountain Fuel*, the Court finds that the plain meaning of the term "reasonably incident" does not allow a federal mineral lessee to use a surface estate to perform mining operations on or upon an adjacent or adjoining surface estate owned by a third party.[15]  471 F.2d at 597; *see also Bourdieu*, 100 P.2d at 534; *Wiser Oil Co. v. Conley*, 346 S.W.2d 718, 722 (Ky. 1961) (noting that, with respect to an oil and gas lease, it "is well settled in Kentucky, as elsewhere, that in the absence of an express agreement, the mineral owners or lessees cannot use the surface for the production of minerals from other lands").

---

"no occasion to decide" the question presented in this case, namely, "[w]hether, in the absence of such pooling law, there might be reason for applying the same principle to oil as is applicable to solid minerals."  *Id*.

[15]Entek acknowledges that the terms of its leases and patents do not expressly grant it the right to access adjoining lands in order to reach its mineral estate.  Docket No. 163 at 14 (Entek agrees that the patent document does not set forth language that "the federal government can give its lessees the right to cross [Stull's] surface to reach a well located elsewhere.")

### b.  No Express Limitations

Entek argues that there are no "express" statutory limitations to the federal government's ability to allow Entek to access Stull's surface estate.  Docket No. 163 at 15-16.  Entek claims that the only express limitation to a mineral lessee's access to the surface estate is the requirement that the lessee post a bond in lieu of an agreement. *Id*.  Entek additionally claims that, pursuant to "future legislation" under the MLA, Entek has the right to "bottom a well bore" underneath Stull's surface estate from a well near Stull's surface.  *Id*. at 16 (citing *M.J. Harvey*, *Jr.*, 109 Int. Bd. Land. App. 31, 1989 WL 255274 (IBLA 1989) and *F.S. Prince*, A-30801 (October 25, 1967) (attached as Ex. I. to Docket No. 163)).

Entek's ability to extract minerals from a well located on property adjacent to or adjoining Stull's surface estate (without considering the issue of surface access) is not at issue in this case.  *See, e.g., Carmichael v. Old Straight Creek Coal Corp.*, 22 S.W. 2d 572, 575 (Ky. 1929) (noting that the question of whether "the owner or lessee of coal underlying a tract of land may use the *underground passages* made in the course of the mining operations for transporting coal from one part to another of adjacent tracts of land" is different from the question of the surface access rights of a mineral lessee). Because the question raised here pertains to the use of a surface estate, citations to *M.J. Harvey* and *F.S. Prince* are not persuasive.

### c.  State Court Precedent

Entek argues that the state court decisions in *Trivette v. Consolidation Coal Co.*, 177 S.W. 2d 868 (Ky. 1944), *Carmichael v. Old Straight Creek Coal Corp.*, 22 S.W. 2d

16

572 (Ky. 1929), and *Bagley v. Republic Iron & Steel Co.*, 69 So. 17 (Ala. 1915), show

that it is sometimes permissible to burden a surface estate to remove minerals from

adjacent or adjoining property.  None of these cases, however, is persuasive.

*Trivette* and *Carmichael* are Kentucky Supreme Court cases issued before *Wiser*

*Oil Co. v. Conley*, 346 S.W. 2d 718, 722 (Ky. 1961).  In *Wiser*, the Kentucky Supreme

Court construed a right-of-way provision contained in an oil and gas lease that gave the

mineral lessee the right to use a road "for any purposes" not to include the right to use

the road for the production of minerals from adjoining or adjacent lands.  346 S.W. 2d

at 722.  Because *Wiser* affirms the two surface owners rule and is a later issued opinion

by the Kentucky Supreme Court related to oil and gas leases, the viability of

inconsistent holdings in *Trivette* and *Carmichael* is tenuous at best.

In *Bagley*, the Alabama Supreme Court found that a mineral lessee's use of air

shafts and fans as well as tram lines "under the surface of the lands in question" was

permissible under the terms of the lease.  69 So. at 18.  This case also does not

support Entek's argument because the right to use subterraneous tram lines or

passageways to move minerals from adjacent or adjoining mines is not a question

presented by this case.  *See Carmichael*, 22 S.W. 2d at 575.  Moreover, the use of air

shafts and fans is not analogous to Entek's proposed use of the Access Road.

In summary, none of the aforementioned cases calls into question the viability of

*Mountain Fuel's* two surface owners rule.  Moreover, none of these cases construed the

SRHA or other federal mineral leases.[16]

_____

[16]The driving force behind Entek's argument appears to be that it will utilize
directional drilling.  The Court notes, however, that directional drilling has been in use

### d.  Unity Rule

Entek claims that 43 C.F.R. § 3101.1-2 allows it to have access to Stull's entire surface estate that is superjacent to Entek's mineral estate without regard to patent or lease lines.  Docket No. 163 at 14-15.  Based on this argument, Entek seeks a declaration that the unity rule allows Entek to cross Stull's surface estate in Section 33 to reach Stull's surface estate in Section 3 solely for the purpose of placing a well on Stull's surface estate in Section 3.  *Id*. at 19; *see also* Docket No. 126-2.

In *Mountain Fuel*, the Tenth Circuit held that, once separately owned surface estates are joined together in common ownership, the mineral lessee does not have to request permission to access each lease independently.  471 F.2d at 597.  This legal principle will be referred to as the "unity rule."

 Based on the holding in *Mountain Fuel*, Entek may not cross Lease COC-69894 for the sole purpose of extracting minerals subjacent to Lease COC-59491.  In *Mountain Fuel*, the Tenth Circuit noted that "the lessees are restricted in their use of the surface by the geographic extent of their particular lease or leases . . . The fact that the field has been unitized is of no significance . . . ."  471 F.2d at 597.  Had Entek sought to access Lease COC-59491 by crossing Lease COC-69894 when the surface land was owned by two separate individuals, it would have needed to request access from two separate owners.  *Id*.  The unity rule excuses a mineral lessee from requesting permission to access its mineral leases when the surface estate overlying the mineral

---

for several decades, yet Entek has not provided a single case in support of the proposition that directional drilling has diminished the viability of the two surface owners rule.

18

leases is commonly owned.  However, the right to access the surface estate does not alter the fact that a mineral lessee's access to the surface estate is restricted to work that is reasonably incident to the extraction of minerals encompassed in a particular lease.  Thus, although the permission to access a surface estate is implied when surface estates are owned in common, the purpose of the access must still be reasonably incident to the development of the particular mineral lease underlying the surface estate.

Any other construction of the unity rule would defeat the rationale underlying the development of split estates as it would allow a mineral lessee to "use the [surface estate] simply as a highway to adjoining property, where the minerals may be of greater value." *Percy La Salle Mining & Power Co. v. Newman Mining, Milling & Leasing Co.*, 300 F. 141, 147 (D. Colo. 1924).  Thus, although Entek does not have to request permission to enter Stull's surface estate when it owns the mineral estate subjacent to Stull's surface estate, Entek's access to Stull's surface estate is limited to the geographic boundaries of the lease from which Entek intends to extract minerals.[17] *Mountain Fuel*, 471 F.2d at 597.  Accordingly, the Court finds that Entek may not cross Lease COC-69894 (Section 33) solely for the development and extraction of minerals in Lease COC-59491 (Section 3). *Mountain Fuel*, 471 F.2d at 597.

---

[17]Stull claims that the BLM did not issue bonds for Leases COC-59666 and COC-69894 because the BLM does not grant bonds for leases on which no drilling activity is conducted.  Assuming this is true, this conclusion adds further support to the view that the right to access a lease is limited to activities performed on that lease.

### e.   Conclusion

In summary, none of the arguments presented by Entek establishes that Entek is entitled to its requested declaratory judgment on Count Two.  Therefore, the Court finds that Stull is entitled to summary judgment on this count.

### C.   Count Three to Entek's  First Claim for Relief

Entek seeks a declaration that it may cross Stull's surface estate that is superjacent to federal minerals unitized by the FRU agreement to explore for and produce minerals anywhere within the FRU.  Docket No. 163 at 21.  Entek contends that, by approving the creation of the FRU, the Secretary of the Interior has expressly modified and amended the federal mineral leases and granted Entek, as the unit operator, the right to access any and all surface estates included in the FRU.  *Id*. at 22.

In response, Stull contends that Entek is collaterally estopped from making its FRU argument because the court in *Stone & Wolf, LLC v. Three Forks Ranch Corp.*, No. 00-cv-01130-REB-OES, 2004 WL 5615898 (D. Colo. Jan 8, 2004), decided the issue adversely to Entek's predecessor-in-interest.  Docket No. 146 at 7-11.  Stull contends that all of the elements of collateral estoppel are met in this case and Entek has no right to relitigate the same legal issue.  *Id*.  Entek, however, argues that it should not be barred from relitigating a unit operator's right of access because collateral estoppel does not apply to unmixed question of law.  Docket No. 163 at 31.

### 1.   *Collateral Estoppel – Unmixed Question of Law Exception*

Before discussing general principles of collateral estoppel, the Court considers whether the unmixed question of law exception applies.

In *United States v. Moser*, 266 U.S. 236 (1924), the Supreme Court recognized, in dicta, that an "unmixed question[ ] of law" does not bind subsequent parties, but that a court's pronouncement of "a *fact*, *question* or *right* distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view." *Id.* at 242 (emphasis in the original). *Moser* described an unmixed question of law as a court's pronouncement of "a rule of law." *Id*.

However, in *United States v. Stauffer Chemical Co.*, 464 U.S. 165, 172-73 (1984), the Supreme Court narrowly restricted the unmixed question of law exception. There, the Court found that the federal government was collaterally estopped from relitigating an issue because the claims presented in the two actions were related, virtually identical, and involved exactly the same parties. *Id*. The Third Circuit in *Burlington N. R.R. Co. v. Hyundai Merchant Marine Co., Ltd.*, 63 F.3d 1227 (3d Cir. 1995), interpreted the Supreme Court's opinion in *Stauffer* to stand for the proposition that the exception of unmixed question of law applies only when the issue presented is a pure question of law and either (1) the two actions involve claims that are substantially unrelated or (2) a new determination of the legal issue is warranted in light of an intervening change in the law. *Id*. at 1229. The Tenth Circuit and the Colorado Supreme Court have yet to address this issue.[18]

---

[18]Stull asserts, and Entek does not dispute, that Colorado law should apply to the issue of collateral estoppel in this case. Docket No. 146 at 8; Docket No. 138 at 4. Accordingly, the Court will apply Colorado substantive law to the collateral estoppel issue. Moreover, it appears that the result will be the same regardless of whether federal common law applies. *See Matosantos Commercial Corp. v. Applebee's Int'l, Inc.,* 245 F.3d 1203, 1208 (10th Cir. 2001) (noting that a determination of which law applies is irrelevant if the result is the same under federal common law).

21

Entek argues that *Three Forks Ranch* held, purely as a matter of law, that a unit operator does not have access to the entire surface area within a federal unit based on the terms of the unitization agreement, the patents, and the leases. Docket No. 163 at 31. The Court, however, need not decide whether the holding in *Three Forks Ranch* constitutes a clear question of law. *See Stauffer*, 464 U.S. at 171 n.4 ("[A]n exception which requires a rigid determination of whether an issue is one of fact, law or mixed fact and law, as a practical matter, would often be impossible to apply"). Given that the *Three Forks Ranch* decision raised identical issues to the ones presented here and Entek is in privity with the plaintiffs in that case, it is undisputed that the two cases are related. In addition, Entek does not argue that an intervening change in the law warrants the application of the unmixed question of law exception. Based on *Stauffer*, the Court has "no trouble finding [that the unmixed question of law exception] is inapplicable [where there is] close alignment in both time and subject matter" between the two cases. *Id*. at 170.

Given that the unmixed question of law exception does not apply, the Court next turns to the issue of whether collateral estoppel bars Entek's attempts to relitigate the issue of whether the unitization agreement allows a unit operator to access all of the surface estates located in the FRU.

### 2. Collateral Estoppel

Collateral estoppel is an "equitable doctrine that operates to bar relitigation of an issue that has been finally decided by a court in a prior action." *Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44, 47 (Colo. 2001); *see Bebo Constr. Co. v. Mattox & O'Brien*,

*P.C.*, 990 P.2d 78, 84 (Colo. 1999).  Collateral estoppel, "protects litigants from the burden of relitigating an identical issue with the same party or his privy and [promotes] judicial economy by preventing needless litigation."  *Argus Real Estate, Inc. v. E-470 Public Highway Authority*, 109 P.3d 604, 608 (Colo. 2005) (internal citations omitted).

Under Colorado law, collateral estoppel applies when the moving party can show that: (1) the issue presented in the current case is identical to an issue actually litigated and necessarily adjudicated in the prior proceedings; (2) the prior action reached a final adjudication on the merits; (3) the party against whom the doctrine is raised was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.  *Bebo Constr. Co.*, 990 P.2d at 84-85; *see Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000) (identifying the elements for federal common law collateral estoppel).

Entek does not dispute that the first three elements of collateral estoppel are met in this case, namely, that the same legal claim was at issue in *Three Forks Ranch*, the action was adjudicated on the merits, and that it is a successor in interest to the plaintiffs in that case.[19]  Docket No. 163 at 31; Docket No. 138 at 3-6.  Rather, Entek

---

[19]In its reply to its motion for a preliminary injunction, Entek claimed that the issues are different between this case and *Three Forks Ranch* because the court in *Three Forks Ranch* held that "[e]xcept for [Three Forks], the owners of surface interests which overlay minerals in the FRU have agreed to the use of their surface under the terms of the Unit Agreement, the Unit Operating Agreement, or otherwise."  Docket No. 138 at 6-7 n. 7.  Entek argues that, "[w]hile this was true as to Stull Ranches at the time of the Stone & Wolf ruling, it is emphatically not true today."  *Id*.  The Court finds this argument unavailing.  Any factual difference between the two cases, such as the fact that Stull gave Entek's predecessors-in-interest an easement that is now revoked, has no legal significance in resolving the surface access rights the FRU grants to the unit

argues that Stone & Wolf and Clayton Williams did not have an incentive to appeal the adverse *Three Forks Ranch* ruling because they secured the Stull Easement before the conclusion of that case.  Docket No. 163 at 31.

The Court agrees that the first three elements of collateral estoppel are met in this case.  *Three Forks Ranch* found that Stone & Wolf and Clayton Williams could not cross Three Forks Ranch's surface estate solely to reach the 12-1 well because nothing in the unitization agreement, the deeds, patents, and leases issued to Stone & Wolf and Clayton Williams allowed these plaintiffs to increase the burden on Three Forks Ranch's surface estate.  2004 WL 5615898, at *12-13.  Entek's current claim is identical to the issue presented in *Three Forks Ranch* and the issue in that case was actually litigated and necessary to the holding.[20]  *Bebo Constr.*, 990 P.2d at 85-86; *Dodge*, 203 F.3d at 1198.  There is also no dispute that the *Three Forks Ranch* opinion is a final judgment on the merits.  *Bebo Constr.*, 990 P.2d at 85-86.  Finally, it is undisputed that Entek is in privity with both Stone & Wolf and Clayton Williams.  *Id*.

The issue then becomes whether the fourth element of collateral estoppel has been satisfied.  To determine whether a previous litigant had a full and fair opportunity to litigate an issue, courts determine whether the remedies and procedures of the first proceeding are substantially different from the proceeding in which collateral estoppel is

operator.

[20]Stone & Wolf and Clayton Williams secured the Stull Easement on July 17, 2003.  Docket No. 133 at 3.  The *Three Forks Ranch* bench trial was held between June 2 and June 4, 2003, with the parties submitting written closing arguments on June 18, 2003.  2004 WL 5615898, at *1.  Thus, the plaintiffs in *Three Forks Ranch* had every incentive to fully litigate the issues before that court during the bench trial because they had yet to secure the Stull Easement.  Docket No. 133 at 3.

asserted; whether the party in privity with the party against whom collateral estoppel is sought had sufficient incentive to litigate vigorously; and the extent to which the issues are identical. *Bebo Const. Co.*, 990 P.2d at 87. Here, the forum is the same as the previous action and the issues are identical; thus, the only question is whether the plaintiffs in *Three Forks Ranch* had an incentive to litigate the case.

Entek argues that its predecessors-in-interest did not have an incentive to vigorously litigate the *Three Forks Ranch* ruling through to an appeal because they secured access to the 12-1 well before the decision in *Three Forks Ranch* was issued. Docket No. 138 at 4-5. However, the right to a full and fair opportunity to litigate does not include whether a party chooses to appeal an adverse decision. Taking into account discretionary factors regarding whether a party decided to file an appeal would "substantially frustrate the doctrine's purpose of protecting litigants from burdensome relitigation and of promoting judicial economy." *Stauffer*, 464 U.S. at 172. Instead, the focus is properly upon the trial or hearing that resulted in the adverse ruling. Entek has raised no suggestion about the fairness of the trial or the incentive of its predecessors to vigorously litigate the issue of the FRU before they secured the Stull Easement.

As a result, the Court finds that Stull has established all of the collateral estoppel elements and Entek is estopped from relitigating the issue raised in Count Three.

### D.   Permanent Injunction

A district court may only issue a permanent injunction when the remedy at law is inadequate to compensate a party for the injury sustained. *Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1353 (10th Cir.

1989).  In order to obtain a permanent injunction, the party seeking a permanent injunction has the burden of demonstrating: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest."  *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007)) (internal quotation marks omitted).  Notwithstanding these factors, the most important factors in the district court's decision to grant an injunction is whether the facts indicate a danger of future violations.  *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1230 (10th Cir. 1997).

The Court finds that Entek has not shown that the risk of future violations as to Count One is likely to occur after the resolution of the issues in this case.  Although Stull has previously restricted Entek's access to its surface estate, such restriction was based on Stull's belief that Entek's access was limited to surveying and staking a specific well location.  In light of the Court granting a declaratory judgment on Count One of the first claim for relief, this issue has been decided and there is no reason to believe that Stull will not abide by the Court's ruling.  *Roe*, 124 F.3d at 1230.  Accordingly, the Court will deny Entek's request for a permanent injunction.

### E.   Declaration of Rights

In light of the foregoing, the Court declares the following:

With regard to Entek's request for a declaratory judgment on Count One, it is:

**ORDERED** that, upon the satisfaction of all state and federal regulations and conditions precedent to access its mineral estate, Entek shall have the right to

access Stull's surface estate to (1) perform work that is reasonably incident to the development of Entek's mineral estate that is directly subjacent to Stull's surface estate, such as staking and surveying proposed well sites on Stull's surface estate, and (2) access well sites or proposed well sites that are located on or upon, but not adjacent or adjoining to, Stull's surface estate to perform work on a well site such as, well bore work, remediation work, or work necessary to remove its minerals from a mineral estate that is subjacent to Stull's surface estate. Entek's access to perform work on Stull's surface estate is limited to the scope of Entek's particular mineral lease or patent.

With regard to Entek's request for a declaratory judgment on Count Two, it is:

**ORDERED** that Entek shall not have the right to use Stull's surface estate to reach a well or well pad located on the surface estate of the BLM or any other person or entity that is not owned by Stull, regardless of the expected location of the minerals Entek seeks to extract.

With regard to Entek's request for a declaratory judgment on Count Three, it is:

**ORDERED** that Entek shall not have the right to use Stull's surface estate in a manner that is inconsistent with a unit operator's right of access as determined in *Stone & Wolf, LLC v. Three Forks Ranch Corp.*, No. 00-cv-01130-REB-OES, 2004 WL 5615898 (D. Colo. Jan. 8, 2004).

## IV. CONCLUSION

It is

**ORDERED** that defendant Stull Ranches, LLC's Motion for Partial Summary Judgment [Docket No. 146] is **GRANTED** in part and **DENIED** in part. It is further

**ORDERED** that plaintiff Entek GRB, LLC's Motion for Summary Judgment and Brief in Support [Docket No. 149] is **GRANTED** in part and **DENIED** in part. It is further

**ORDERED** that Defendant's Unopposed Motion to Correct Typographical Error in Doc. 158 [Docket No. 166] is **GRANTED**. It is further

**ORDERED** that plaintiff Entek GRB, LLC's Motion to Exclude Opinions of Jan T. Tomanek [Docket No. 122] is **DENIED** as moot. It is further

**ORDERED** that Entek GRB, LLC's Motion for Leave to File Supplemental Authority [Docket No. 168] is **GRANTED**.  It is further

**ORDERED** that Stull Ranches' Motion for Leave to Submit Supplemental Authority [Docket No. 169] is **GRANTED**.  It is further

**ORDERED** that this case is closed in its entirety.


DATED March 29, 2013.

                                        BY THE COURT:


                                         s/Philip A. Brimmer
                                        PHILIP A. BRIMMER
                                        United States District Judge